OPINION
BY SKEEL, J.
The plaintiff was injured by slipping and falling on the sidewalk on Wayside Road in Cleveland, Ohio. At the time he fell, he was walking north on the westerly side of the street. The point where he fell was about 75 feet north of Euclid Avenue and about at the rear line of the property of the defendant, The Texas Distributing Company, upon which the- company maintained a gasoline station.
Euclid Avenue runs in a general *2 easterly and westerly direction, and Wayside Road intersects Euclid Avenue at about right angles, running only to the north. Euclid Avenue is located at the foot of a rather steep hill or ridge to the south, and to the north the land slopes downward at a moderate degree.
The defendant, The Texas Distributing Company, in 1930 leased the property at the northwest corner of this intersection and constructed thereon a gasoline station. Subsequently it sub-leased the station to the defendant, Bernard R. Hutchens who was in possession and control thereof on March 16, 1940, the date of plaintiff’s fall.
To make this property usable as a gasoline station it was necessary to fill dirt and sand over all of the lot from the sidewalk line of Euclid Avenue to the rear line. At the place where the station was erected the fill was about three feet above the sidewalk level. The depth of the fill is not disclosed by the evidence but plaintiff’s Exhibit C shows that even before the fill, the land was higher than the sidewalk level and sloped toward Wayside Road as well as to the north. The station was constructed in the middle of the lot which was 100 feet wide on Euclid Avenue and was 90 feet deep on Wayside Road. There was about 30 feet in side yard from the station to the sidewalk on the west side of Wayside Road. The station has three drive-way entrances, two on Euclid Avenue and one on Wayside Road, beginning just a few feet north of Euclid Avenue. Inasmuch as Wayside Road slopes to the north, the fill sloped from the station building which was built on the level with Euclid Avenue, gradually to the east and north to a small retaining wall which was built west of the west sidewalk of Wayside Road, curving along the driveway and then parallel with Wayside Road to the rear of the lot, a distance of about 20 feet. The top of this retaining wall was about a foot above the level of the sidewalk and from the point where it left the driveway was about 3 or 4 feet west of the sidewalk. Along the rear, for a short distance was a single plank for the purpose of supporting the fill, which plank extended to within three feet of the retaining wall on Wayside Road and projected above the ground for a distance of not more than four or five feet and because, of the slope of the ground could have little or no effect in directing the course of the surface water.
The fill which was made of dirt and sand was covered with slag.
It is the contention of the plaintiff that in changing the grade of the said lot and in constructing the retaining walls, the defendants diverted the natural course of the surface water and thereby created an unusually dangerous condition in freezing weather. That on the day in question, by virtue of the accumulation of water which was negligently directed over the sidewalk at the end of the retaining wall, ice was caused to form as the day turned cold, creating a dangerous condition which was the direct and proximate cause of the plaintiff’s fall, whereby he was injured.
The passing of surface water, over public ways and sidewalks, which in cold weather turns to ice, is a condition created by the elements and one which an abutting property owner cannot forestall.
When one is injured by falling because of ice accumulated upon a public sidewalk from the natural flow of surface water, no right of action for damages can be *3 maintained against the abutting property. Only in the event the abutting property owner has, by his negligence, caused or created such a dangerous condition by artificially accumulating the surface water and causing it, as thus accumulated, to be discharged upon the public way or sidewalk, in considerably greater amount than there would have been from natural causes, will liability follow. Chase v City of Cleveland, 44 Oh St 505.
The owner, or one who occupies property, has the legal right to use his property in whatever way he may desire, so long as the use is in all respects lawful and such right is not restricted by consideration of the change of the flow of surface water.
' As was so clearly stated by the Supreme Court of Massachusetts, in the case of Gannon v Hargadon, 87 Amer. Dec. 625:
“A .party may improve any portion of his land, although he may thereby cause the surface water flowing thereon, whencesoever it may come, to pass off in a different direction, and in larger quantities than .previously. If such an act causes damage to adjacent land it is dammum absque injuria.”
Only in the event that the surface water is artificially accumulated, and negligently discharged on to the property of another, or on to the public ways, under such ^circumstances as to create a dangerous condition and materially different than would otherwise result, one that in the exercise of ordinary care should have been reasonably anticipated as endangering the safety of others, can liability be claimed against the owner or occupant of the property.
There is an exhaustive analysis of the cases with respect to the liability of an abutting owner for injuries sustained by slipping and falling because of ice on the sidewalk, which condition came about from the flow of surface water from such abutting owner’s property, in 34 Am. Law Rep. (annotated) 406..
The rule to be gained from these cases, where the facts are similar to those in the instant case, is well1, illustrated in the case of Anne Sherman v City of LaCrosse and LaCrosse Refining Company, which is reported in full at the head of the annotations. In this case the company had constructed a sidewalk along the south side of its building and “as a consequence,, water from the south side of the roof of the building drips on to the brick sidewalk in times of rain and melting snow. In the 31.6 feet the brick sidewalk has a drop of something over an inch toward the city sidewalk.” The plaintiff was injured by slipping on ice formed on the city sidewalk. The ice was the result of water which had run down the walk from melting snow on the roof of the building, and from the piles of snow on each side of the company’s walk.
“It is claimed that the brick walk was constructed in such a manner as to accumulate water and that it was an artificial accumulation and not the natural flow of the water which caused the icy condition of the sidewalk.”
The court held:
“The owner of property abutting on a highway who merely 'constructs a paved walk leading from the street to his building, is not liable for injury to-a pedestrism on the public sidewalk in front of his property by a fall on ice accumulated because the slope of his walk *4 conducts eaves drip from his building on to the sidewalk.”
And in the body of the opinion, the court said:
“The brick walk involved in this case is an improvement very common to city property. Indeed, most city property owners have some kind of a walk leading from their home to the city sidewalk. This walk was built in the ordinary manner. It was built for and devoted to the ordinary and usual purposes of a sidewalk. It is not contended that it was built for the purpose of accumulating water coming from the roof of the building and conveying it on to the city sidewalk. * * * We do not think that the result here should be regarded as an artificial accumulation of surface water. This brick walk, and the purpose for which it was constructed is in no sense comparable to the conveyer pipe and the purpose for which it was constructed in the Ellington case.” (Ellington v Virogen, 155 Wis. 472 —144 N. W. 1130.)
“That plainly constituted an accumulation of surface water. It was constructed for that purpose. The situation is quite different from an ordinary improvement intended for a different purpose which may have an incidental influence upon the natural flow of ■surface water. We hold that the situation here did not constitute •an artificial accumulation of surface water and that no actionable negligence on the part of the refining company is disclosed by the evidence. * *”
The instant case comes clearly within the rule as thus stated, and is not to be considered as analagous to the downspout cases and others where there is a direct purpose to accumulate surface water artificially and when so artificially accumulated, such water is negligently discharged on the land of another or upon the public highway.
The evidence in the instant case does not disclose any attempt to artificially accumulate the surface water. The improvement was one that was in all respects in accord with standard practices. To what extent the surface water was diverted from its former course, or whether more or less water flowed over any particular part of the sidewalk on Wayside Road, after the improvement was completed' than before, was not disclosed by a single word of testimony.
The plaintiff relies strongly on the case of Hynes v Brewer, 194 Mass. 435. This was a retaining wall case, but is • easily distinguished from the case at bar. In the Hynes ease, the retaining wall collected surface water in an “artificial pool” which “overflowed in a considerable stream across the sidewalk and resulted in an accumulation of ice.”
We conclude, therefore, that the evidence failed to support the plaintiff’s contention that the defendant created a nuisance by the improvement of the property at the northwest corner of Euclid Avenue and Wayside Road, or that there was any negligence on the part of defendant which in any way was the proximate cause of plaintiff’s injuries, and the judgment of the court of common pleas, directing a verdict for the defendant is therefore affirmed.
LIEGHLEY, PJ., concurs.
MORGAN, J., dissents.