COLEMAN, APPELLANT, *v.* REAGAN, APPELLEE.
(Two cases.)

(Nos. 7659 and 7660—Decided March 16, 1953.)

*Mr. Walter K. Sibbald* and *Mr. Vernon R. Brose,* for appellants.
*Messrs. Rendigs, Fry & Kiely,* for appellee.

MATTHEWS, P. J. In these two actions the plaintiffs —husband and wife—seek to recover damages resulting from physical injuries received by the wife from a fall upon the public sidewalk in Pedretti Avenue, adjacent to the defendant's land. The cases were tried together and the appeals were presented together in this court.

As a basis for defendant's liability, the plaintiffs alleged that a cement driveway was constructed extending from such sidewalk to a garage on defendant's property and that defendant had permitted a gully to be formed adjacent to the driveway, which permitted surface water on her land to accumulate "in said gully and to flow alongside said driveway in a stream towards, onto, over and under said cement sidewalk, at a point where said sidewalk had become undermined, broken, uneven and depressed"; that on January 11, 1950, water which drained from defendant's property had formed ice in the damaged portion of such sidewalk; and that she was walking along the sidewalk not knowing of the existence of the damaged

condition of such sidewalk and while exercising reasonable care, she stepped upon the damaged portion of the sidewalk, and because of the damaged, uneven and slippery condition she was unable to maintain her footing and was precipitated to the sidewalk and seriously injured.

The negligence alleged against the defendant is that the sidewalk in its damaged condition was unsafe for travel and that she contributed to "the nuisance there existing by causing and permitting surface water to accumulate on her land and to drain therefrom so as to cause said sidewalk to be damaged as heretofore described; * * * also that defendant negligently failed to properly control the accumulation of surface water on her land or to prevent the flow thereof into the damaged part of said sidewalk or to prevent the accumulation and freezing of said flow therein."

The defendant admitted the existence of the sidewalk and her ownership of the abutting property and that the plaintiff Julia Coleman fell and sustained some injury, and denied all other allegations. The defendant alleged the affirmative defenses of contributory negligence and assumption of risk.

At the trial, evidence was introduced showing that defendant owned the premises at the corner of Carnation and Pedretti Avenues, the surface of which was level with Carnation Avenue, and that it extended back its entire distance of 230 feet on Pedretti Avenue at about that same grade with just enough slope toward the rear to cause the water falling thereon to flow in that direction. However, when Pedretti Avenue was widened and improved a grade was established starting level with Carnation Avenue and sloping gradually downward toward the rear, so that 150 feet from Carnation Avenue the defendant's property was about three feet higher than the surface

of Pedretti Avenue opposite it. The sloping of the embankment along Pedretti Avenue, without doubt, caused some surface water to flow and trickle into Pedretti Avenue which would have flowed to the rear had the grade not been lowered. The residence was located some distance from Carnation Avenue so that its rear wall was about 75 feet from a garage with a capacity sufficient to house three automobiles. The roof was so arranged that the water flowed in equal amounts to the four sides. There were no gutters or downspouts. How far this garage was from Pedretti Avenue does not appear. It was reached from Pedretti Avenue by passing across the sidewalk to a cement driveway or apron. The garage, and perhaps a ridge or embankment close to it, formed an obstruction to the flow of the water and diverted some of it onto the apron and across the sidewalk. Some water also reached the sidewalk from the embankment along Pedretti Avenue and the slope caused by the cut through which the garage was reached. The residence and garage were on the location when the defendant became the owner of the property, but when Pedretti Avenue was improved the defendant caused the sidewalk and cement driveway to be constructed.

Beyond this, the evidence presents a picture of a residence lot covered by grass, with bushes and flowering plants scattered about, particularly around the edges, forming the usual obstructions to the flow of surface water.

There is a suggestion in the testimony of the plaintiff Paul Coleman that there was a ditch just north of the garage and driveway. What he referred to manifestly was the indentation caused by the dripping of the water from the garage roof. He testified that there

was a slope from the yard level to the garage drive-way, and, on cross-examination, he was asked:

"Q. You said you wouldn't unqualifiedly call it a ditch; you called it a place where the water passed down; is that what you said? A. By a ditch I would mean something that has been dug by hand and it has not been dug out.

"Q. This would be then a sort of a passage cut out by water as it ran down, is that right? A. I would say so, yes."

As frequently happens in the trial of cases, a blackboard was used and pointed to in order to establish locations, and neither the board nor a copy is incorporated in the bill of exceptions. This makes it difficult for a reviewing court to understand the testimony and places it at a great disadvantage as compared to the trial judge and, naturally, causes a reviewing court to give great weight to the trial court's analysis of the evidence. In this case there is no necessity for us to reach a conclusion contrary to that of the trial judge because he made no specific expression as to this ditch, although his general conclusion was adverse to the plaintiffs.

Our conclusion is that the testimony shows that the "so-called ditch" was located on the slope leading down from the yard to the garage driveway and resulted from the normal little rivulets into which surface water forms when on a slight grade before it reaches a well-defined watercourse.

It had rained on the night of January 10, 1950, but by ten o'clock of the following morning the sidewalk on Pedretti Avenue was dry. The plaintiff Julia Coleman was walking northwardly on the sidewalk, immediately north of the north side of the driveway leading to the garage on defendant's property where she

fell and was seriously injured. She described her fall as follows: "I was walking along and just all of a sudden my two feet went from under me and I had no indication—sometimes when you fall you feel yourself going but I didn't; just my two feet went from under me and I fell." She did not testify as to the cause of her fall or the condition of the sidewalk at the place. However, her husband testified as to the condition of the sidewalk at or near the place where she fell and there was corroboration of his testimony on that subject in some respects. Pointing to the blackboard and apparently at a point on the sidewalk just north of the driveway he said: "This place in here was full of little pock marks—little holes. * * * The holes were three inches in diameter and with a depth of half an inch." And they covered an area of four and a half feet in length and the width of the sidewalk.

It was below freezing and water had accumulated in these holes and frozen in and between the holes, forming a strip of ice across the sidewalk about three inches wide.

The inference is that the plaintiff stepped on this space and was caused to fall.

At the close of plaintiffs' evidence, the court arrested the case from the jury and entered judgment for the defendant.

In so doing the court said:

"One injured by falling on ice which has accumulated on a public sidewalk from the natural flow of water has no right of action in damages against the abutting owner, but only if the latter has, by his negligence, caused or created such a dangerous condition by the artificial accumulation of surface water and causing it, as thus accumulated, to be discharged upon the public way or sidewalk in considerably greater amount than would have been from natural causes.

" * * *

"Now the law further says that the legal right of the owner or occupier of the property to use it in whatever way he may desire is restricted only by lawful use and not by consideration of the change of the flow of surface water."

The law is clear that the abutting owner owes no duty to the public to construct and maintain a sidewalk in the street. That duty under Section 3714, General Code, is imposed upon municipalities as to streets within their boundaries. The duty which defendant owed to the plaintiff Julia Coleman as she proceeded along Pedretti Avenue was that which all owe to so act as to not subject others to unreasonable hazards which a reasonably prudent person would anticipate, and that same duty applies with equal force to persons in both public and private places. 28 Ohio Jurisprudence, 632, Section 400. It is affirmative negligent acts that create liability, and the fact that the wrongdoer happens to be the owner of the abutting land is purely fortuitous and immaterial in determining liability.

There is no evidence that the holes or uneven places in the sidewalk were created by any affirmative act of defendant. There is a suggestion that freezing may have contributed to the creation of the holes and that some of the water came from defendant's premises, but it is clear that this water, if any, may have come from rain falling on the sidewalk at a higher level or from the surface water flowing from the yard in accordance with the law of gravity, without any diversion for which defendant was responsible.

It should be mentioned that the defendant cannot be held liable for the condition resulting from the lowering of the grade of Pedretti Avenue. If that change of grade caused more water to flow from defendant's yard into and upon the sidewalk, that was

not the result of any affirmative act by defendant. And it is as reasonable to conclude that the water which collected in the defects in the sidewalk was caused in that way as in any other suggested manner. In this regard, the evidence suggests possibilities without presenting any rational basis for a choice.

The evidence shows that during the time defendant owned this lot the only change she made in the manner of using it resulted from the change of grade of Pedretti Avenue. Continuing to use it in the same manner, certainly, cannot be said to have been an unreasonable or unlawful use. The residence and garage remained in the same location. The water from the garage roof reached the ground in the same manner and quantity. From there, it sought the lower level in accordance with the law of nature. In doing so it may in the course of time have worn a slight depression or channel, but certainly it had not been transformed from surface water into a well-defined watercourse. And, certainly, there is no substantial evidence, if any, that the defendant designed it.

A case very similar on its facts to the case at bar is that of *Cavanaugh* v. *Texas Distributing Co.*, 37 Ohio Law Abs., 1, 45 N. E. (2d), 142, decided by the Court of Appeals of the Eighth Appellate District. The court reviewed at great length the right of property owners to make use of their property and the circumstances under which they are liable for injuries caused by ice and snow upon the abutting sidewalk. The court held there was no liability in that case. It is true one of the judges dissented, but the dissent was not based on any disagreement as to the law. The dissenting judge was of the opinion that the evidence showed an intentional accumulation and discharge of the water upon the sidewalk.

In *Strohm* v. *Molter*, 30 Ohio Law Abs., 330, this

court had occasion to consider the use which the owner could make of urban property. We quote the second paragraph of the headnotes:

"The rule of 'reasonable use' is applicable to urban lots, if the use of the premises in the locality is found to be what might be reasonably expected to exist, thereby modifying the general restriction against 'throw back' and over-acceleration of surface water on adjoining premises."

The trial court found that there was no substantial evidence of any wrongful act by defendant causing or contributing to the cause of the plaintiff's injuries. We agree with that conclusion. At most, the evidence suggests possibilities only as to the cause of plaintiff's fall, and there is no substantial evidence of any wrongful act causing or contributing thereto.

For these reasons, the judgments are affirmed.

*Judgments affirmed.*

Ross and HILDEBRANT, JJ., concur.